**BORG–WARNER ACCEPTANCE COR-PORATION, a Delaware Corporation, Plaintiff-Appellant,**

v.

**LOVETT & THARPE, INC., a Georgia Corporation, Defendant-Appellee.**

No. 85–8260.

United States Court of Appeals, Eleventh Circuit.

April 14, 1986.

Michael L. Wetzel, Atlanta, Ga., for plaintiff-appellant.

Francis M. Lewis, Stanley Smith, Dublin, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, and ANDERSON, Circuit Judge, and Adkins *, Senior District Judge.

ANDERSON, Circuit Judge:

Borg-Warner Acceptance Corporation ("Borg-Warner"), a Delaware corporation, appeals the dismissal of its suit to domesticate and collect a Missouri state court judgment against Lovett & Tharpe, Inc., a Georgia corporation. The district court dismissed the action on the ground that the Missouri court lacked *in personam* jurisdiction over the defendant, which rendered the Missouri default judgment void and unenforceable. We affirm.

## I. FACTS AND COURSE OF PROCEEDINGS

In 1980, Lovett & Tharpe, a Georgia corporation having its principal place of business in Dublin, Georgia, contracted with Coon Manufacturing and Distributing ("Coon"), a Missouri proprietorship, for Coon to manufacture certain merchandise to be purchased by Lovett & Tharpe. The contract between Coon and Lovett & Tharpe was negotiated and entered into in Georgia. Representing Coon in the negotiations was its employee based in the Atlanta area; representing Lovett & Tharpe in the negotiations were home office personnel of Lovett & Tharpe based in Dublin, Georgia. No officer or other representative of Lovett & Tharpe visited Missouri to negotiate the contract or to inspect Coon's manufacturing plant.

Borg-Warner agreed to loan Coon money with which Coon could finance its manufacturing of the merchandise to be purchased by Lovett & Tharpe, provided that Lovett & Tharpe would execute and accept Borg-Warner's trade acceptance.[1] Lovett & Tharpe did execute and accept the trade acceptance, and Borg-Warner advanced the money to Coon. The agreement between Borg-Warner and Lovett & Tharpe was negotiated between the Atlanta, Georgia, office of Borg-Warner and the Dublin, Georgia, office of Lovett & Tharpe.

Coon manufactured the merchandise in Missouri and transported it from Missouri to Lovett & Tharpe in Georgia. Lovett & Tharpe subsequently returned some of the goods to Coon in Missouri and, in connection with the return, one or more of Lovett & Tharpe's employees entered the state of Missouri. Borg-Warner sent the trade acceptance through normal banking channels for payment from Lovett & Tharpe's account at Farmer & Merchants Bank in Dublin, Georgia. Lovett & Tharpe refused to make payment or to permit payment on the trade acceptance and caused the trade acceptance to be returned unpaid.

After Lovett & Tharpe refused to make payment, Borg-Warner brought suit against Lovett & Tharpe in the Circuit Court of Jackson, Missouri. Lovett & Tharpe did not appear or defend. The Missouri court found that it had personal jurisdiction over Lovett & Tharpe and therefore entered a default judgment against Lovett & Tharpe for the full amount of the trade acceptance.

The present diversity action began when Borg-Warner brought suit in the United States District Court for the Southern District of Georgia seeking to domesticate the Missouri judgment. Borg-Warner moved for summary judgment and Lovett & Tharpe opposed that motion on the ground that the Missouri court had lacked *in personam* jurisdiction, rendering the default judgment void and unenforceable. The district court concluded that the Missouri judgment acted as res judicata as to any

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. A trade acceptance is generally defined as:
   A draft or bill of exchange drawn by the seller on the purchaser of goods sold, and accepted by such purchaser, and its purpose is to make the book account liquid, and permit the seller to raise money on it before it is due under the terms of the sale, and its principal function is to take the place of selling goods on an open account, and when properly drawn, it is negotiable.
   Black's Law Dictionary 1338 (5th ed. 1979). In this case the trade acceptance acted as "a letter of credit ... with [Lovett & Tharpe] as drawee ... and Borg-Warner as drawer." Appellant's Brief at 5.

dispute regarding personal jurisdiction and granted Borg-Warner's motion for summary judgment. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 560 F.Supp. 905 (S.D.Ga.1983). On appeal this court held that the Missouri default judgment did not preclude Lovett & Tharpe from defending against the judgment on the ground that the Missouri court had lacked personal jurisdiction. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 734 F.2d 639 (11th Cir.1984).

On remand, Borg-Warner again moved for summary judgment in the district court. After a hearing, the district court denied the motion for summary judgment and dismissed the case on the ground that the Missouri court had lacked personal jurisdiction over Lovett & Tharpe. Borg-Warner appeals the order dismissing its complaint.

## II. DISCUSSION

Under the Missouri long-arm statute, the jurisdiction of the Missouri courts over non-resident defendants has been extended to the extent permissible under the due process clause. *See, e.g., Newport v. Wiesman*, 627 S.W.2d 874, 876–77 (Mo.1982); *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo.1970). In order to determine whether the exercise of personal jurisdiction in this case was consistent with due process, we must examine whether Lovett & Tharpe had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

■ A state may constitutionally exercise personal "general jurisdiction" over a foreign corporation if there are continuous and systematic general business contacts between the state and the foreign corporation, even if the cause of action does not relate to the foreign corporation's activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

408, 104 S.Ct. 1868, 1872–73 & n. 9, 80 L.Ed.2d 404 (1984); *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). We conclude that Lovett & Tharpe's contacts with Missouri were not so "continuous and systematic" as to permit the exercise of general personal jurisdiction over them. Lovett & Tharpe is a Georgia corporation; all the officers are residents of Georgia; and Lovett & Tharpe is not licensed nor has it ever been licensed in Missouri. There is no evidence that Lovett & Tharpe has an office or employees in Missouri, that they solicit business in Missouri, that they provide services or close sales in Missouri, that they sell products to Missouri purchasers, that they purchase products from Missouri sellers (other than in the instant transaction), or that they carry on any other activity there.

■ Since Missouri could not exercise "general jurisdiction" over Lovett & Tharpe, we must examine whether its courts could exercise "specific jurisdiction," i.e., whether the controversy arose out of Lovett & Tharpe's contacts with Missouri. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S.Ct. at 1872 n. 8. When a claim arises out of or is related to a defendant's contacts with the forum, the court must consider the "relationship among the defendant, the forum, and the litigation" to determine whether the exercise of jurisdiction was consistent with due process. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

If the controversy in the instant case were considered to arise solely out of the transaction between Borg-Warner and Lovett & Tharpe, the Missouri court could not have constitutionally asserted jurisdiction over Lovett & Tharpe. The trade acceptance form itself shows no connection with Missouri—the city of the drawer, Borg-Warner, is listed as Overland Park, Kansas. The agreement between Borg-Warner and Lovett & Tharpe was negotiated between the Atlanta, Georgia, office of Borg-Warner and the Dublin, Georgia, office of

Lovett & Tharpe. The trade acceptance contract was found by the district court to have been made in Georgia.

■ However, we need not decide whether this controversy arises solely out of transaction between Borg-Warner and Lovett & Tharpe, because, even if the cause of action arose out of a larger transaction involving Borg-Warner, Lovett & Tharpe and Coon, Lovett & Tharpe had contacts with the state of Missouri which are insufficient for the constitutional exercise of jurisdiction by the Missouri court.

Borg-Warner asserts that there are three contacts between the transaction and Missouri such that the minimum contacts test of *International Shoe* and its progeny is met: the merchandise which was the subject of the contract between Lovett & Tharpe and Coon was manufactured in Missouri; Lovett & Tharpe employees entered Missouri to return the goods; and Borg-Warner placed the trade acceptance with a Missouri bank for payment. As discussed above, Lovett & Tharpe has carried on no activity in Missouri other than the instant transaction. Because we conclude that the contacts Lovett & Tharpe did have with Missouri were insufficient to permit the constitutional exercise of personal jurisdiction over Lovett & Tharpe, we affirm.

In order for a court to exercise jurisdiction over a defendant, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (citations omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

As this court has recognized previously, in resolving constitutional problems of personal jurisdiction, "as elsewhere, important constitutional questions prove themselves immune to solution by checklist, and each case must be decided on its own facts." *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 499 (5th Cir.1974). *See also, Austin v. North American Forest*, 656 F.2d 1076, 1091 (5th Cir. Unit A Sept. 21, 1981), *Southwest Offset, Inc. v. Hudco Publishing Co.*, 622 F.2d 149, 151 (5th Cir. 1980).

The fact that Borg-Warner placed the trade acceptance with a Missouri bank is not a relevant factor. In *Hanson v. Denckla*, the Supreme Court stated, "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." 357 U.S. at 253, 78 S.Ct. at 1240. Lovett & Tharpe could not reasonably have expected to have been haled into court in Missouri because of Borg-Warner's unilateral activity there. In fact, if this were a relevant contact, Lovett & Tharpe could have been haled into court in any state where Borg-Warner placed the trade acceptance for payment.

The fact that employees of Lovett & Tharpe entered Missouri to return the manufactured goods to Coon is jurisdictionally significant. *See Southwire Co. v. Trans-World Metals & Co.*, 735 F.2d 440, 442 (11th Cir.1984). In *Southwire*, this court found that a post-contract execution visit to Georgia to negotiate enforcement of the executed contract constituted an act in the forum from which the cause of action arose. The decision does not indicate what weight should be given to post-execution acts. In *Southwire*, the post-execution act was considered in conjunction with a pre-execution visit to solicit the contract and the extensive prior course of dealings between the plaintiff and the defendant. Therefore, we must consider the post-execution contact in the instant case in conjunction with the other alleged contact, i.e., the performance of the contract by Coon in Missouri.

■ The case in this circuit with facts most closely analogous to those of the instant case is *Owen of Georgia, Inc. v.*

*Blitman,* 462 F.2d 603 (5th Cir.1972). The plaintiff in that case was a Georgia corporation in the business of steel fabrication. The defendants were Massachusetts builders. The Massachusetts defendants allegedly negotiated an oral contract to purchase fabricated steel from the Georgia fabricator. The alleged contract was negotiated in Massachusetts between the Massachusetts defendants and the Georgia plaintiffs. The negotiation was conducted on behalf of the Georgia plaintiff by its representative who traveled to Massachusetts from Georgia for this purpose. The steel was produced in Georgia and shipped to Massachusetts. The Georgia plaintiff sought to exercise personal jurisdiction over the Massachusetts defendants in a Georgia court. This court affirmed the district court's judgment dismissing the claim for lack of *in personam* jurisdiction. *Blitman* stands for the proposition that a mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state.

Cases in other circuit courts of appeals are to the same effect. In *Scullin Steel Co. v. National Railway Utilization Corp.,* 676 F.2d 309 (8th Cir.1982), a Missouri seller sued a nonresident buyer in Missouri for breach of a contract for the sale of steel castings. All of the negotiations between the parties had been conducted outside Missouri. None of the defendant's employees ever visited Missouri in connection with the contract. The defendant was not authorized to do business in Missouri, had no office or employees in Missouri, owned no real property in Missouri, and had no agent in Missouri. The defendant had sent its contract payments to Missouri and had communicated by use of the mail and telephone with the plaintiff in Missouri. The plaintiff had partially performed its obligations under the contract in Missouri. In addition, the steel castings were to be delivered "FOB St. Louis." The Eighth Circuit found that assertion of personal jurisdiction over the nonresident defendant would not be consistent with due process. It stated that " '[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state.' " 676 F.2d at 313 (citations omitted). The Eighth Circuit indicated that it was the nonresident purchaser's actions which were important, rather than the location of the seller's performance of its obligations under the contract. Moreover, the Eighth Circuit pointed out that the "use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." 676 F.2d at 314. The court also recognized that a nonresident purchaser might be considered to have less contact with the forum state than a nonresident seller: " 'solicitation by a nonresident purchaser for delivery outside the forum state is a more minimal contact than that of a [nonresident] seller soliciting the right to ship goods into the forum state.' " *Id.* (citations omitted).[2]

The Seventh Circuit has also had occasion to rule on the case of a one-time nonresident purchaser of goods from a company in the forum state. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). In *Lakeside Bridge,* a West Virginia buyer ordered goods from a Wisconsin company. The nonresident defendant had no place of business, property, bank deposits, telephone or telephone listing in Wisconsin and had never sent any officer, agent, or employee into Wisconsin.

---

**2.** For cases involving the question of exercising personal jurisdiction over a nonresident seller, see *Austin v. North American Forest,* 656 F.2d 1076, 1091 (5th Cir. Unit A Sept. 21, 1981); *Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d 630 (5th Cir.1980), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981); *Charia v. Cigarette Racing Team, Inc.,* 583 F.2d 184 (5th Cir.1978); and *Benjamin v. Western Boatbuilding Corp.,* 472 F.2d 723 (5th Cir.), *cert. denied,* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973).

It had no contact with Wisconsin other than those which gave rise to the cause of action. There were telephone conversations and correspondence between West Virginia and Wisconsin. The purchased goods were to be supplied "FOB SELLERS PLANT MILWAUKEE, WISCONSIN with freight allowed to rail siding nearest project site." 597 F.2d at 598. The contacts which the Wisconsin plaintiff urged were sufficient to satisfy due process were use of the mail and telephone, acceptance of the purchase order in Wisconsin, and the ordering of goods from a Wisconsin company with knowledge that they were likely to be manufactured in Wisconsin and shipped from there. *Id.* at 600. The Seventh Circuit held that "[u]se of the interstate telephone and mail service to communicate with a Wisconsin plaintiff, if constituting contact supporting jurisdiction, would give jurisdiction to any state into which communications were directed." *Id.* at 604. Furthermore, the court held that "formalities of contract execution are not determinative for purposes of jurisdiction." *Id.* Most importantly, the court held that performance of contractual obligations by the resident seller cannot serve as a sufficient contact to confer jurisdiction over the out-of-state purchaser, "at least when the contract does not require the plaintiff to perform in the forum state." *Id.* at 601. The court found that the contract clause "FOB SELLERS PLANT MILWAUKEE, WISCONSIN" did not "establish that the contract required Lakeside to perform its contractual obligations at its Wisconsin plant and [did] not itself create a contact sufficient to justify the challenged assertion of jurisdiction." *Id.* at 603–04. *See also Jadair, Inc. v. Walt Keeler Co.,* 679 F.2d 131 (7th Cir.), *cert. denied,* 459 U.S. 944, 103 S.Ct. 258, 74 L.Ed.2d 201 (1982); *Nu-Way Systems of Indianapolis, Inc. v. Belmont Marketing, Inc.,* 635 F.2d 617 (7th Cir. 1980). *Compare Wisconsin Electrical Manufacturing Co. v. Pennant Products, Inc.,* 619 F.2d 676 (7th Cir.1980) (two visits significant in the formation of the contract and in defendant's efforts to have it correctly performed were sufficient for exercise of personal jurisdiction).

*Blitman,* which is binding precedent in this circuit, and *Scullin* and *Lakeside,* in other circuits, are similar to the instant case except for the limited post-execution contact in the instant case.

Two circuit courts of appeal have dealt with the case of one-time nonresident purchasers of goods whose employees visited the state of the seller. For example, relying strongly on *Owen of Georgia, Inc. v. Blitman,* the new Fifth Circuit found unconstitutional the attempted exercise of *in personam* jurisdiction by a court in Texas over an Alaskan purchaser of goods made by a Texas corporation. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026 (5th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984). In the *Hydrokinetics* case, the parties negotiated a contract by telex, telephone, and letter between Alaska and Texas. While the contract was being negotiated, two officers of the Alaskan purchaser visited the Texas manufacturer's plant to inspect the equipment and facilities. The manufactured goods were delivered to the buyer in Seattle, Washington. After delivery, two officers of the buyer and buyer's Alaska counsel traveled to Texas to discuss problems with the manufactured goods with the seller. The new Fifth Circuit held that the nonresident purchaser "did not purposefully avail itself of the privilege of conducting business within Texas." *Id.* at 1029. "Although it did agree to purchase goods which it knew were to be manufactured in Texas, no performance [by the purchaser] was to take place in Texas, other than perhaps the payment for the goods." *Id.* The court termed the exchange of communications between Texas and Alaska as "insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws." *Id.* (citations omitted). Although the Fifth Circuit recognized the fact "[t]hat officers of [purchaser] twice traveled to Texas to inspect Hydrokinetic's facilities and to resolve the dispute between the parties is relevant," *id.,* it held

that "in this case we do not find it is sufficient to alter the basic quality and nature of [purchaser's] contact with the state of Texas." *Id.*

Lovett & Tharpe had less contact with the state of Missouri than the purchaser in *Hydrokinetics.* The contract between Coon and Lovett & Tharpe was negotiated and entered into in Georgia. Representing Coon in the negotiations was its employee based in the Atlanta area; representing Lovett & Tharpe in the negotiations were home office personnel of Lovett & Tharpe based in Dublin, Georgia. No officer or other representative of Lovett & Tharpe visited Missouri to negotiate the contract or to inspect Coon's manufacturing plant. The communications between Georgia and Missouri were not extensive. Moreover, while both Lovett & Tharpe and the purchaser in *Hydrokinetics* made post-contract execution contact with the forum state, Lovett & Tharpe's contact was more limited. Lovett & Tharpe merely returned the goods, whereas the Alaskan purchaser visited the forum state seeking to resolve "problems related to the design, construction, and capabilities" of the goods. *Hydrokinetics,* 700 F.2d at 1027, n. 1.

█ Although the decisions of the new Fifth Circuit are not binding precedent on us, the *Hydrokinetics* case provides persuasive precedent that the Missouri court lacked personal jurisdiction over Lovett & Tharpe.

The First Circuit also addressed this question in *Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079, 1084–85 (1st Cir.1973). That case involved two nonresident buyers who purchased goods from a Massachusetts producer. There had been no prior dealing between either of the nonresident purchasers and the Massachusetts plaintiff. There was no requirement that the plaintiff produce the goods in Massachusetts. The purchasers did not supervise or participate in the production of the goods. One of the nonresident purchasers visited the Massachusetts manufacturer three times after the manufacturer had made its initial shipment of goods; the other nonresident purchaser made one visit. *Id.* at 1082. The First Circuit found that the "primary contact these two defendants had with Massachusetts was [the manufacturer's] performance of their contracts within the Commonwealth." *Id.* at 1085. This contact was not sufficient to support long-arm jurisdiction. *Id.* The remaining contacts, including post-execution visits to the manufacturer's plant, were found to be "ancillary" to the placement of the orders, and the exercise of personal jurisdiction in light of all the contacts was considered improper. *Id.*[3]

Lovett & Tharpe's contact with Missouri was very similar to the contact the purchasers in *Whittaker* had with Massachusetts. The primary contact in both cases was an isolated purchase; there had been no prior dealing between Coon and Lovett & Tharpe or the parties in *Whittaker.* Neither Lovett & Tharpe nor the two purchasers in *Whittaker* supervised or took part in the production of the items purchased. Lovett & Tharpe's visit to Missouri, like the *Whittaker* buyers' trips to Massachusetts, was not designed to negotiate the contract, oversee production, or enforce the contract. Moreover, the *Whittaker* court suggested that contact with the forum state which occurs after rejection of the goods, as in the instant case, should be discounted. *Id.* at 1082 n. 3. Thus, the *Whittaker* decision suggests that the Missouri court's exercise of personal jurisdiction in this case was unconstitutional.

There is very little difference between the instant case and the cases decided by the First, Fifth, Seventh and Eighth Circuits. The primary contact involved in all

---

**3.** In the same case, the First Circuit ruled that personal jurisdiction could properly be exercised over another nonresident purchaser who was not as "passive" as the two defendants discussed in the text. 482 F.2d at 1084. That buyer solicited the seller, "actively supervised or actually participated in" the development of the manufactured product, provided the procedures to be used in manufacture, visited the seller's facility, monitored the performance of the contract, and amended the design specifications during the contract period. *Id.* at 1083–84.

the cases is the production of the goods in the forum state.[4] There was no requirement imposed by Lovett & Tharpe that Coon manufacture the goods in Missouri. The only difference between the instant case and the *Scullin Steel* and *Lakeside Bridge* cases is that Lovett & Tharpe employees did have isolated contact with Missouri—i.e., they returned noncomplying goods to Coon. However, as the First Circuit in *Whittaker* and the Fifth Circuit in *Hydrokinetics* decided, we find that this isolated post-contract visit to the forum state is insufficient for the exercise of personal jurisdiction over the defendant. As in *Whittaker*, this visit did not involve supervision of production of the goods or participation in the production of the goods.

4. Use of interstate communications and the mails and execution of a contract in the forum state were ancillary factors in the cases decided by the First, Fifth, Seventh, and Eighth Circuits. The record indicates that some of these minor factors may not be present in this case—the contract between Coon and Lovett & Tharpe was negotiated and entered into in Georgia between a salesman representing Coon in the Atlanta area and the Dublin, Georgia office of Lovett & Tharpe. Though these are minor factors to begin with, their absence in the instant case further supports our determination that there are not "minimum contacts" between Lovett & Tharpe and Missouri in this case.

5. Borg-Warner relies on two Missouri cases, *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325 (Mo.1984) and *Foster v. Gaertner*, 655 S.W.2d 750 (Mo.Ct.App. 1983), to support its argument that the exercise of personal jurisdiction over Lovett & Tharpe is constitutional. Both these cases are distinguishable. In *Metal Service Center*, the nonresident defendant had contracted with a Missouri corporation to process the nonresident corporation's unfinished products. The defendant corporation shipped the unfinished materials into Missouri at its own expense and, after the work in Missouri was finished, the product was shipped back to the nonresident company at its own expense. Although the foreign corporation had no regular contacts with Missouri and although the contract in question had been made in Georgia, the Missouri Supreme Court found that it was proper for Missouri courts to exercise personal jurisdiction over the defendant. The instant case can be distinguished from *Metal Service Center* in that Lovett & Tharpe was not sending materials into the state of Missouri to be worked on—Lovett & Tharpe was a passive purchaser. In contrast, the defendant in *Metal Service Center* was clearly "avail[ing] it-

Nor did it involve enforcement of the contract. *Compare Southwire Co. v. Trans-World Metals & Co.*, 735 F.2d at 442. Lovett & Tharpe merely returned noncomplying goods by means of its own employees, rather than a common carrier. We find that the post-breach return of the goods which were the subject of the underlying contract was an ancillary factor, and that considered together with the fact that Coon was performing its own obligations under the contract in Missouri, is not sufficient to constitute activity "by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240.[5]

self of the privilege of conducting activities" in Missouri and could have "reasonably antic-ipate[d] being haled into court there." Moreover, the Missouri Supreme Court in *Metal Service Center* distinguished *Scullin Steel* because "[h]ere Metal Services supplied the raw materials and shipped them into Missouri for working by the [plaintiff]." *Id.* at 328. In contrasting *Metal Service Center* and *Scullin Steel*, the Missouri Supreme Court focused on this fact and noted that "this case [*Metal Service Center*] contains an additional and significant factor." *Id.*

*Foster v. Gaertner* is likewise distinguishable. The discussion of jurisdiction in the case of *Foster v. Gaertner* is three sentences long:

Finally, buyer asserts the trial court lacked jurisdiction over buyer because the contract was not made in Missouri. However, there is credible and sufficient evidence the contract was made in Missouri and buyer transacted business in Missouri. The trial court therefore had jurisdiction over buyer.

*Foster*, 655 S.W.2d at 751. It seems that the defendant only challenged the exercise of jurisdiction on the ground that the contract was not made in Missouri—a question of fact. No statutory or constitutional challenge to the exercise of jurisdiction appears in this decision. From the facts recited in the discussion of the merits of the *Foster* case, it appears that the nonresident buyer actually came to Missouri and negotiated the sale of a helicopter in parts, a truck, a trailer, and a flyable helicopter to be delivered in St. Louis, Missouri. These facts support the Missouri court's finding that the contract had been made in Missouri. Moreover, these few facts seem to distinguish the *Foster* case from the instant case. The negotiations in the instant case all took place in Georgia, and Lovett & Tharpe did not enter Missouri to negotiate or enforce the contract.

### III. CONCLUSION

The binding precedent in this circuit indicates that a purchaser in an isolated transaction may not be subject to personal jurisdiction in a seller's state merely because the manufacturer performed its duties under the contract there. *Owen of Georgia, Inc. v. Blitman*, 462 F.2d 603 (5th Cir. 1972). *See also, Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d at 313; *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d at 604. The binding case law also indicates that a post-contract execution contact with the state is relevant in determining whether an exercise of personal jurisdiction is proper. *Southwire Co. v. Trans-World Metals & Co.*, 735 F.2d at 442. With support from the decisions in *Hydrokinetics* and *Whittaker*, we hold that the isolated contact with Missouri made by Lovett & Tharpe employees was an ancillary factor, which, considered in conjunction with Coon's performance of its contract obligations in Missouri was insufficient to constitutionally permit exercise of personal jurisdiction over Lovett & Tharpe. In sum, the Missouri court which entered the default judgment against Lovett & Tharpe lacked personal jurisdiction over that Georgia corporation. Accordingly, the judgment of the district court is

AFFIRMED.