**LANA MORA, INC., Plaintiff,**

v.

**S.S. WOERMANN ULANGA, formerly the Dalsa, her engines, boilers, etc., Partenreederei Dietrich Tamke G.m.b.H. & Co., and Hafskip HF, Defendants.**

**No. 86 Civ. 7102 (MGC).**

United States District Court, S.D. New York.

Oct. 28, 1987.

---

McDonald, Herbermann & Fenzel by Joseph B. McDonald, Daniel L. Connors, New York City, for plaintiff.

Walker & Corsa by Leroy S. Corsa, Sandra R.M. Gluck, New York City, for defendants S.S. Wiking and Partenreederei Dietrich Tamke G.m.b.H. & Co.

## OPINION

CEDARBAUM, District Judge.

This is an action in admiralty brought under the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 *et seq.* (COGSA). Defendant Dietrich Tamke G.m.b.H. & Co. ("Dietrich Tamke") has moved for dismissal for lack of personal jurisdiction pursuant to Fed.R. Civ.P. 12(b)(2), or, in the alternative, on grounds of *forum non conveniens.* Its ship, also a defendant, has moved to dismiss for lack of in rem jurisdiction. For the reasons discussed below, the motions to dismiss are granted.

### Factual Background

Dietrich Tamke, a German corporation, owns the S.S. WIKING, formerly called the DALSA (the "vessel"), which has been sued here in an incorrect or outdated name. On March 22, 1985, Dietrich Tamke timechartered the vessel to Hafskip HF ("Hafskip"), an Icelandic corporation. Plaintiff, Lana Mora, Inc. ("Lana Mora"), contracted with Hafskip to transport knitting yarn from Rotterdam to New York on the vessel. A bill of lading was issued by Hafskip, and signed by Hafskip "as agents." Neither the master of the vessel nor Dietrich Tamke signed the bill of lading.

The vessel never reached New York harbor. Instead it turned back and returned to Europe, where the cargo was discharged at Hamburg. This turnabout apparently occurred because of the financial difficulties of Hafskip,[1] which, although named as a defendant in this action, has not been served and has not appeared. Lana Mora seeks damages for its costs of reshipping the goods.

### Discussion

Although the plaintiff has the ultimate burden of establishing jurisdiction over defendants by a preponderance of the evidence, until an evidentiary hearing is held it need only make a *prima facie* showing that jurisdiction exists. *Cutco Industries v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986). In the absence of an evidentiary hearing, all pleadings and affidavits are construed in the light most favorable to

---

1. At oral argument of the motion, counsel reported that Hafskip is in bankruptcy proceedings in Iceland.

plaintiff, and all doubts are resolved in plaintiff's favor. *Id.* Lana Mora was given additional time following oral argument of this motion to seek discovery on the jurisdictional questions. But since no evidentiary hearing has been held, I rely only on facts that are uncontested, or that appear in Lana Mora's papers in opposition to the motion to dismiss. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 56–57 (2d Cir.1985).

*In Personam Jurisdiction over Dietrich Hamke*

Lana Mora argues that in personam jurisdiction lies over Dietrich Tamke pursuant to New York's long-arm statute, which permits the exercise of jurisdiction over a defendant who "contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1). Lana Mora contends that Dietrich Tamke contracted to carry knitting yarn to New York because it was a party to the bill of lading which Hafskip subscribed "as agents." According to Lana Mora, this language clearly implied that Hafskip was signing as agent of the master (who is in turn the authorized agent of the owner) or of Dietrich Tamke.

As further support for its position, Lana Mora points to clause 55 of the time charter, which provides in part:

> Charterers have the option of issuing Hafskip's Bills of Lading for shipments under this Charter Party.
> It is understood that the Master will authorise [sic] Charterers, or their agents, to sign Bills of Lading on his behalf provided the Bills are made up in accordance with Mate's and Tally Clerk's receipts.

If a bill of lading is signed by the master or by a charterer authorized to sign on behalf of the owner or the master, such a bill binds the shipowner. *E.g., Gans S.S. Line v. Wilhelmsen (The Themis),* 275 F. 254, 262 (2d Cir.), *cert. denied,* 257 U.S. 655, 42 S.Ct. 97, 66 L.Ed. 419 (1921); *see also EAC Timberlane v. Pisces, Ltd.,* 745 F.2d 715, 719 (1st Cir.1984); *Tube Products of India v. S.S. Rio Grande,* 334 F.Supp. 1039, 1041 (S.D.N.Y.1971). But where the master neither signs the bill of lading himself nor authorizes the charterer to sign on behalf of the owner, and the charter does not grant the charterer authority to bind the owner, the charterer's signature on the bill does not bind the owner. *Demsey & Assoc. v. S.S. Sea Star,* 461 F.2d 1009, 1015 (2d Cir.1972); *Associated Metals & Minerals Corp. v. SS Portoria,* 484 F.2d 460, 462 (5th Cir.1973); *Tube Products,* 334 F.Supp. at 1041–42. *Cf. Joo Seng Hong Kong Co. v. S.S. Unibulkfir,* 483 F.Supp. 43 (S.D.N.Y.1979) (extending potential liability under COGSA somewhat further, but not addressing personal jurisdiction). In *Demsey, Associated Metals* and *Tube Products,* the owner was not bound even where the charterer, without authority to do so, subscribed the bill of lading with the words "for the Master," or their equivalent.

In this case, it is undisputed that the master of the vessel, Manfred Becker, was never asked to authorize Hafskip to sign the bill of lading on his behalf. The charter does not authorize Hafskip to sign on the master's behalf. It states that the master *will* authorize Hafskip to sign bills of lading on his behalf, not that such signing is automatically authorized without any request for authorization. Indeed, the charterer is expressly authorized to issue bills on its *own* behalf. Moreover, the bill of lading was clearly a Hafskip bill. It was issued on Hafskip's form, and makes no mention of Dietrich Tamke. Thus, under *Demsey, Associated Metals* and *Tube Products,* Dietrich Tamke is not bound by the bill of lading.

*Demsey, Associated Metals* and *Tube Products* do not deal directly with personal jurisdiction. Rather, they address the substantive question of whether a shipowner is liable under COGSA on a bill of lading signed by the charterer allegedly on behalf of the master or the owner. Nevertheless, personal jurisdiction depends on the existence of the same contractual relationship analyzed in these cases. Where there is no contractual relationship, there can be no personal jurisdiction under CPLR § 302(a)(1) based upon a defendant's

having contracted to supply goods or services in New York.

Lana Mora relies on *Nichimen Co. v. M.V. Farland*, 462 F.2d 319 (2d Cir.1972), and *Aljassim v. SS South Star*, 323 F.Supp. 918 (S.D.N.Y.1971), in support of its contention that Dietrich Tamke was a party to the contract evidenced by the bill of lading. This reliance is misplaced. In *Nichimen*, "[t]he master testified that he did not see the bill of lading but that the usual practice was for [the charterer], or its agent, to sign the bills of lading on his behalf." 462 F.2d at 323. Because the master was aware of and acquiesced in that practice, there was no dispute that the bill of lading bound the owner as well as the charterer to the contract of carriage. *Id.* at 330. In *Aljassim*, since the owner of the vessel defaulted, there was again no dispute that the bill of lading was signed on behalf of the owner. 323 F.Supp. at 921, 922. Neither case supports as a general proposition that a bill of lading signed by a charterer also binds the owner of a vessel.

Lana Mora also argues that since it was not a party or privy to the charter agreement and therefore did not know the arrangements between the owner and the charterer, and since it accepted the bill of lading on its face, it should have the benefit of the "plain meaning" of the signature on the bill—that Hafskip signed as agent for the master.

■ This is essentially an argument that Hafskip possessed apparent authority to bind Dietrich Tamke as principal. The argument is disposed of not only by *Demsey, Associated Metals* and *Tube Products*, but by general principles of agency law. An agent cannot create apparent authority solely by his own acts. *Hallock v. State*, 64 N.Y.2d 224, 231, 485 N.Y.S.2d 510, 513, 474 N.E.2d 1178 (1984). The existence of apparent authority depends first upon "words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transac-

tion." *Id.* In addition, the third party must reasonably rely on that appearance of authority. *Id.* *See generally E.F. Hutton & Co. v. First Fla. Sec., Inc.*, 654 F.Supp. 1132, 1142–43 (S.D.N.Y.1987).

■ Lana Mora has made no showing that either Dietrich Tamke or the master held out Hafskip as having authority to bind Dietrich Tamke solely by Hafskip's signature "as agent." And though I need not reach the reliance issue, I note that Hafskip did not even sign the bill of lading "for the Master," as is customary in cases where the shipper claims that a bill of lading signed by the charterer also binds the owner. *E.g., Tube Products*, 334 F.Supp. at 1040. Lana Mora's argument that ambiguities in drafting are resolved against a drafter and in favor of an innocent third party would be better directed at Hafskip than at Dietrich Tamke, which Lana Mora has not claimed was the drafter of the bill of lading.

■ Lana Mora argues in the alternative that process was served on Dietrich Tamke pursuant to the *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters*, 20 U.S.T. 361 (1969), and that this is the equivalent of service under a federal statute pursuant to Fed.R.Civ.P. 4(e). For this argument Lana Mora contends that the New York long-arm statute is inapplicable, and that Dietrich Tamke's contacts with the entire United States should be aggregated to determine the constitutionality of exercising personal jurisdiction over it. Lana Mora has cited no case to support the proposition that service under the Convention is equivalent to service under a federal statute. The Third Circuit rejected this argument in *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 286–90 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). It found that the Convention provides merely a mechanism for serving process which is otherwise authorized, and is not an independent federal authorization for service abroad. I find the

reasoning of *DeJames* persuasive, and follow it here.

### *In Rem Jurisdiction Over the Vessel*

■ Lana Mora has not arrested the vessel pursuant to Fed.R.Civ.P. Supplemental Admiralty Rule C(3), but has alleged in its complaint that the vessel will be present in this District during the pendency of this action. Amended Complaint ¶ 5. An officer of the owner of the vessel has stated in an affidavit that she does not "anticipate[ ]" that this will be the case. Affidavit of Helga Tamke, dated March 26, 1987, at 2. The vessel has moved for dismissal for lack of in rem jurisdiction. Lana Mora has not submitted any opposition to this motion, and for that reason the motion is granted.[2]

Since there is no basis for either personal jurisdiction over Dietrich Tamke or in rem jurisdiction over the vessel, I do not reach the issue of *forum non conveniens* under COGSA.

### *Conclusion*

The motions to dismiss the complaint as against defendant Dietrich Tamke for lack of personal jurisdiction and as against the vessel for lack of in rem jurisdiction are granted. Since the only other defendant, Hafskip, has not been served as required by Fed.R.Civ.P. 4, this action is dismissed.

SO ORDERED.

---

**2.** It is interesting to note that there are several cases in which judges of this District have held in the exercise of their discretion that an unsupported allegation that a vessel would be present in the District was insufficient to warrant the retention of jurisdiction. *See Vanol USA, Inc. v. M/T Coronado*, 663 F.Supp. 79, 82 (S.D.N.Y. 1987); *The Crispin Co. v. S/S Jowood*, 1973 A.M.C. 2623 (S.D.N.Y.1973); *International Terminal Operating Co. v. Skibs A/S Hidlefjord*, 63 F.R.D. 85 (S.D.N.Y.1973); *Winpac Corp. v. MV Amacuro*, 1972 A.M.C. 830 (S.D.N.Y.1972).