**FRANCOSTEEL CORPORATION and Unimetal–Normandie, Plaintiffs,**

v.

**The M/V CHARM, her engines, boilers, tackle, furniture, apparel, etc., in rem, P/R Tiki and Mortensen & Lange, Defendants.**

Civ. A. No. CV492–312.

United States District Court, S.D. Georgia, Savannah Division.

June 30, 1993.

Edwin D. Robb, Jr., Savannah, GA, for plaintiff Francosteel Corp.

Walter Charlton Hartridge, II, Bouhan, Williams & Levy, Edwin D. Robb, Jr., Carl-

ton Edward Joyce, Bouhan, Williams. and Levy, Savannah, GA, for plaintiff Unimetal–Normandie.

Robert Strudwick Glenn, Jr., Hunter, Maclean, Exley & Dunn, Savannah, GA, for defendants.

## ORDER

ALAIMO, District Judge.

On January 29, 1993, Plaintiffs, Francosteel Corporation ("Francosteel") and Unimetal–Normandie ("Unimetal"), filed this admiralty and maritime claim under the Carriage of Goods by Sea Act, 46 U.S.C.App. §§ 1300–1315 (1988).[1] Plaintiffs seek recovery because Defendant vessel, the M/V CHARM, sank at sea while carrying Plaintiffs' goods, which were being shipped from Caen, France, to ports in Savannah, Georgia, and Jacksonville, Florida. This action is presently before the Court on two motions by the parties. Defendants seek dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Defendants argue that they lack sufficient minimum contacts with Georgia, the forum state, to justify the exercise of personal jurisdiction. In the alternative, Defendants argue that the action should not proceed in this jurisdiction based on grounds of *forum non conveniens*. Plaintiffs, similarly, seek determination of whether or not Defendant, P/R Tiki's contacts with Georgia are sufficient to support personal jurisdiction and seek partial summary judgment on the issue, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion will be **GRANTED** and, in turn, Plaintiffs' motion will be **DENIED**.

## BACKGROUND

### I. *The Parties*

Francosteel is a corporation organized under the laws of the State of New York with its principal place of business in New York City. Francosteel is in the business of importing steel products for resale to companies located in the United States. Unimetal is a French corporation with its principal place of business in Caen, France. Unimetal is in the business of manufacturing steel products. Defendant, the M/V CHARM, was a general cargo vessel of Danish registry with a home port of Kopenhavn, Denmark. Defendant, P/R Tiki, is a Danish shipping partnership based in Holte, Denmark, and was the owner of the M/V CHARM. Defendant, Mortensen & Lange ("Mortensen"), is a Danish "interessentskab" or partnership established under the laws of Denmark, with its principal place of business in Holte, Denmark. Mortensen is engaged in the business of managing oceangoing vessels and was the manager of the vessel, the M/V CHARM, during the time relevant to the instant action.

### II. *The Loss of Goods*

On October 27, 1992, P/R Tiki entered into a charter agreement with General Shipping & Chartering, Rotterdam ("GSC") for the charter of the M/V CHARM. GSC subsequently sub-chartered the M/V CHARM to Unimetal. The charter agreement between GSC and P/R Tiki anticipated that the M/V CHARM would transport steel wire rods from Caen, France, to ports in Savannah, Georgia, and Jacksonville, Florida. On November 19, 1992, four bills of lading were issued, with two of the bills of lading listing Savannah, Georgia, as the discharge point and the other two listing Jacksonville, Florida. The bills of lading list Unimetal as the shipper of the cargo and Francosteel as the consignee.

On November 20, 1992, the cargo of wire rods was loaded aboard the M/V CHARM at Caen, France, and the vessel departed that same day, bound for Savannah, Georgia. The M/V CHARM sank at sea on November 24, 1992, and the vessel and cargo were a total loss. According to Defendants, there is no possibility of salvaging the vessel or its contents. As a result of this loss, Plaintiffs have brought the present admiralty and maritime action against P/R Tiki and Mortensen, *in personam,* and against the M/V CHARM,

---

1. This action was first commenced on December 17, 1992, with Francosteel as the sole Plaintiff. Unimetal was added as an additional Plaintiff pursuant to the amended complaint filed on January 29, 1993.

*in rem.* Plaintiffs contend that: (1) the M/V CHARM was unseaworthy; (2) P/R Tiki and the M/V CHARM breached the contract of carriage and maintained an unseaworthy vessel; and, (3) Mortensen, as the manager of the M/V CHARM, was negligent in failing to maintain a seaworthy vessel.

## DISCUSSION

### I. *In Personam Jurisdiction*

The *in personam* jurisdiction in this action is predicated upon the Georgia Long Arm Statute which, in part, provides:

> A court of this state may exercise personal jurisdiction over any non-resident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he ... [t]ransacts any business within this state....

O.C.G.A. § 9–10–91 (1982 & Supp.1992).

■ "In a diversity action, a federal court may assert jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum State, and only if the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment." *Vermeulen v. Renault, U.S.A. Inc.,* 965 F.2d 1014, 1021 (11th Cir.1992). "When the courts of the forum state have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, state law need not be applied: [a court] need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process." *Id.* The Georgia legislature contemplated that jurisdiction under O.C.G.A. § 9–10–91 is to be exercised over nonresident defendants to the extent permissible by due process. *See id.* at 1021–22; *see also Complete Concepts, Ltd. v. General Handbag Corp.,* 880 F.2d 382, 388 (11th Cir. 1989); *Hayes v. Irwin,* 541 F.Supp. 397, 417 (N.D.Ga.1982), *aff'd,* 729 F.2d 1466 (11th Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984); *Interstate Paper Corp. v. Air–O–Flex Equip. Co.,* 426 F.Supp. 1323, 1324–25 (S.D.Ga.1977); *First United Bank v. First Nat'l Bank,* 255 Ga. 505, 506,

340 S.E.2d 597 (1986). As such, this Court must merely determine if the exercise of personal jurisdiction over Defendants would comport with the constitutional requirements of the Due Process Clause.

■ There are two parts to the inquiry into whether or not due process is satisfied, thereby allowing exercise of personal jurisdiction over a nonresident defendant. First, a court must find that the nonresident defendant purposefully established "minimum contacts" with the forum state such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). *See generally* David B. Levendusky, Annotation, *"Minimum Contacts" Requirement of Fourteenth Amendment's Due Process Clause (Rule of International Shoe Co. v. Washington) For State Court's Assertion of Jurisdiction Over Nonresident Defendant,* 62 L.Ed.2d 853 (1981 & Supp.1992).

Second, the exercise of personal jurisdiction must not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see also Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

In *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Supreme Court discussed the two methods by which "minimum contacts" can arise. The Court noted that "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Id.* at 414 n. 9, 104 S.Ct. at 1872 n. 9. By contrast, "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." *Id.* at 414 n. 8, 104 S.Ct. at 1872 n. 8. This Court will address, in turn, whether

or not the exercise of personal jurisdiction over Defendants is proper under either general or specific jurisdiction.

## A. General Jurisdiction

■ In *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir.1986), the Eleventh Circuit noted that "[a] state may constitutionally exercise personal 'general jurisdiction' over a foreign corporation if there are continuous and systematic general business contacts between the state and the foreign corporation, even if the cause of action does not relate to the foreign corporation's activities in the forum state." In the present action, the contacts between both P/R Tiki and Mortensen with the State of Georgia are insufficient to give rise to personal general jurisdiction. As Defendants note, neither P/R Tiki nor Mortensen have continuous and systematic contacts with Georgia because neither has ever: (1) maintained offices or had general agents outside of Denmark; (2) become licensed to transact business in Georgia; (3) sold any real or intangible property in Georgia; (4) advertised any property, product or service in Georgia; (5) maintained any subsidiaries or affiliates in Georgia; (6) paid for a telephone or established a telephone number in Georgia; (7) maintained a bank account in Georgia; (8) owned any interest in real property in Georgia; (9) purchased any interest in any Georgia corporation; (10) maintained any office or business operation in Georgia; (11) based any employee in the state or engaged any general agent in Georgia; (12) maintained any accounts or records in Georgia; or, (13) stored goods or other business supplies in Georgia. (Mem. in Support of Def.s' Mot. to Dismiss at 5–7). This Court finds the existence of these factors to be inconsistent with the exercise of personal general jurisdiction over Defendants.[2] *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784,

787 (5th Cir.1990); *Borg–Warner*, 786 F.2d at 1057. As such, if this Court may exercise personal jurisdiction over Defendants, such jurisdiction must be based upon personal specific jurisdiction.

## B. Specific Jurisdiction

■ The inquiry with regard to personal specific jurisdiction is whether or not the controversy arose out of the defendant's contacts with the forum state. *Borg–Warner*, 786 F.2d at 1057. "When a claim arises out of or is related to a defendant's contacts with the forum, the court must consider the 'relationship among the defendant, the forum, and the litigation' to determine whether the exercise of jurisdiction [is] consistent with due process." *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)). A court must find "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (citations omitted). Such an inquiry must be made on a case-by-case basis with a fact-specific determination of whether or not the contacts are sufficient to meet constitutional requirements. *Borg–Warner*, 786 F.2d at 1058.

In a case analogous to the present action, the Fifth Circuit, in *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir.1990), found insufficient contacts by the owner of a vessel to the forum state of Louisiana where the cargo vessel sank at sea prior to reaching its destination. In *Asarco*, the court affirmed the district court's finding that personal specific jurisdiction was unwarranted wherein the district court stated:

Plaintiffs have produced no evidence of defendants' contacts with Louisiana other

---

2. Plaintiffs argue that on at least two other occasions, once in December of 1991 and once in November of 1992, the M/V CHARM delivered goods to Savannah, Georgia. (Br. in Support of Pl.s' Mot. for Partial Summ.J. at 11). Plaintiffs contend that these prior contacts are sufficient to constitute "continuous and systematic" contacts to give rise to personal general jurisdiction. This Court finds, similar to the recent Fifth Circuit

case of *Asarco, Inc. v. Glenara, Ltd.*, that such contacts are not continuous and systematic but more aptly classified as merely "sporadic" contacts. 912 F.2d 784, 787 (5th Cir.1990) (finding twenty calls at Louisiana ports, two in 1985, nine in 1986, two in 1987, four in 1988 and three in 1989, are merely "sporadic" contacts and insufficient to support personal general jurisdiction).

than their intention to send the M/V Cumberlande to Burnside[, Louisiana]. This intention was never realized, because the ship sank in the Pacific Ocean. Research has revealed no case which has held that defendant's intentions alone are sufficient to qualify as minimum contacts under *International Shoe Company v. Washington,* [326] U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945). There must be more to satisfy due process requirements. Therefore, defendants' motion to dismiss for lack of personal jurisdiction is granted.

*Asarco, Inc. v. Glenara Ltd.,* 1989 A.M.C. 1895 (M.D.La.1989).

In affirming the district court, the court of appeals rejected the plaintiffs' argument that the defendants, the owner of the vessel and the vessel's management company, were subject to personal jurisdiction because they had contracted to deliver the cargo to the forum state. *Asarco,* 912 F.2d at 786. The court noted that the vessel was on charter, and there was no evidence of the existence of any such contract. *Id.* Moreover, the court found that *in personam* jurisdiction did not arise over the defendants as a result of any obligation in the bill of lading. *Id.* According to the court, the bill of lading was signed by the vessel's charterers, and there was no evidence that the master of the vessel had bestowed authority on the charterers to bind the master. *Id.* As such, the court found a lack of specific jurisdiction. *Id.* at 787.

■ In the present action, Plaintiffs attempt to distinguish *Asarco* by arguing that "[i]n that case, the vessel was under the control of its charterers, not the owner[, and] if the owner had contracted to deliver the cargo to Louisiana, it would have been subject to jurisdiction." (Pl.s' Reply Br. at 10). Plaintiffs contend that "[i]n this case, the bills of lading were signed by the master of the vessel on behalf of the owner [and, therefore,] P/R Tiki is bound by the bills of lading and amenable to suit." (Br. in Support of Pl.s' Mot. for Partial Summ. J. at 4). Although Plaintiffs are correct that the bills of lading in the present action are signed by the "Master or Agent" of the M/S CHARM, *see* Br. in Support of Pl.s' Mot. for Partial Summ. J. at A, this Court does not find any

distinction from the *Asarco* holding sufficient to find *in personam* jurisdiction over P/R Tiki. The only indication on the bills of lading is that the signatory "Master or Agent" is an apparent employee of Mortensen. *Id.* Plaintiffs have presented no evidence that P/R Tiki, the owner of the vessel, gave the signatory actual or apparent authority to bind P/R Tiki. As the court noted in *Asarco,* "[a]lthough signature as agent of the vessel may confer *in rem* jurisdiction over the vessel once it sets sail with the cargo, it does not confer *in personam* jurisdiction over the owner." 912 F.2d at 786–87 (citing 2A Benedict on Admiralty, *Bills of Lading* § 35 at 4–19 (7th ed. 1990)). *See also Cactus Pipe & Supply Co. v. M/V MONTMARTRE,* 756 F.2d 1103, 1112 (5th Cir.1985) (finding insufficient evidence that the vessel owner granted authority to signatory of bills of lading). Accordingly, as to Defendant P/R Tiki, this Court finds no persuasive rationale to depart from the holding in *Asarco.*

The Seventh Circuit reached a conclusion similar to *Asarco* in *United Rope Distribs., Inc. v. Seatriumph Marine Corp.,* 930 F.2d 532 (7th Cir.1991). In *United Rope,* a foreign vessel was chartered for the delivery of twine from Salvador, Brazil to Superior, Wisconsin. *Id.* at 533. The ship never reached its destination because it sank at sea near Halifax, Nova Scotia, Canada. As a result, the purchaser of the twine brought an action against the shipper for recovery of the cargo. Upon a challenge to the personal jurisdiction over the shipper, the district court dismissed the action. The court of appeals summarized the district court's dismissal stating that:

> Seatriumph had so few "contacts" with Wisconsin that the due process clause of the fifth amendment forbids the exercise of jurisdiction there. Seatriumph, a one-ship corporation, did no business in Wisconsin. The [vessel at issue] had never visited Wisconsin, coming no closer than Duluth, Minnesota, to which it delivered cargo beans in 1987. United Rope's only strand tying Seatriumph to Wisconsin is that the bills of lading called for delivery f.o.b. "Superior–U.S.A." The [vessel] was to land the twine in Superior, Wisconsin, from which it would go overland to United

Rope's customers, two of them located in Wisconsin. Duluth and Superior straddle the Minnesota–Wisconsin border, and some stevedores serve both ports, but Minnesota is not Wisconsin. So the standard bases of personal jurisdiction are missing.

*Id.* Upon appeal, the district court's dismissal was affirmed with the court of appeals stating:

> [t]hat two citizens of Wisconsin wanted to take delivery out of the shipment aboard the [vessel] has nothing to do with Seatriumph.... Seatriumph had no "contacts" at all with Wisconsin, *having failed in its promise to acquire the first by putting the twine ashore there.* The due process clause therefore would not allow the State of Wisconsin to exercise personal jurisdiction over Seatriumph.

*Id.* at 534 (emphasis added) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

The primary distinction between the *Asarco* and *United Rope* holdings is that in *United Rope,* the facts indicate that the bills of lading were signed under authorization of the vessel's master, and the defendant was clearly bound by the signature. As such, *United Rope* provides support for a finding that, even where the defendant is bound to transport the cargo to the specific destination, "minimum contacts" are lacking where the vessel failed to reach the destination, absent additional factors. As such, this court finds, based upon the *Asarco* and *United Rope* holdings, that there are insufficient contacts to subject either P/R Tiki or Mortensen to personal specific jurisdiction.

Although no similar cases were found in this jurisdiction, the above finding comports with analogous cases under Georgia law. The Georgia Long Arm Statute allows for the exercise of personal jurisdiction over a nonresident defendant that "[t]ransacts any business within [the] state." O.C.G.A. § 9–10–91(1) (1982 & Supp.1992). In *Lyons Mfg. Co. v. Gross,* 519 F.Supp. 812 (S.D.Ga.1981),

the issue of whether or not the exercise of personal jurisdiction was appropriate under O.C.G.A. § 9–10–91(1) was addressed. In *Lyons,* a resident corporation and its president brought suit against a nonresident former shareholder, alleging breach of employment and shareholders agreements. *Id.* at 814. The district court found that the shareholders agreement did not constitute the "transaction of business," and the court dismissed the action, stating that:

> [t]he Court is unable to conclude that *the negotiation and execution of agreements outside the forum state,* which affect a domestic corporation under the laws of the forum and which delimit a resident party's control over that corporation, would, without more, confer *in personam* jurisdiction over a nonresident party to the agreements.

*Id.* at 816–17 (emphasis added). *See also Berry v. Jeff Hunt Machinery Co.,* 148 Ga. App. 35, 36, 250 S.E.2d 813 (1978) (stating "where there are no negotiations or contracts entered into in the forum state, with respect to the goods that are the subject matter of the litigation, there have not been sufficient "contacts" with the forum state to comply with the "transacting business" requirement of Georgia's Long Arm Statute.").

As discussed in the general jurisdiction section above, there is no evidence that either P/R Tiki or Mortensen are engaged in general business activities within the State of Georgia. Moreover, no business relations related to the present action occurred within Georgia. All contract negotiations occurred outside of Georgia, and any agreements related to the charter of the vessel and the transport of the cargo were entered into outside of this forum. This Court finds that all of these factors indicate that neither P/R Tiki nor Mortensen meet the "transacting business" requirement of the Georgia Long Arm Statute. As such, consistent with the holdings of other jurisdictions discussed above, this Court finds the exercise of *in personam* jurisdiction over these Defendants to be improper.[3]

---

3. Having found inadequate contacts with the forum state to warrant the exercise of personal jurisdiction, this Court declines to address the

second inquiry, that the exercise of such jurisdiction must not offend "traditional notions of fair

## II. *In Rem Jurisdiction*

 Plaintiffs also assert a cause of action against the M/V CHARM *in rem.* Rule E(3)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure provides that "[p]rocess in rem and of maritime attachment and garnishment shall be served only within the district." Accordingly, "[t]o establish ·*in rem* jurisdiction in admiralty the res must be present in the district when the suit is filed or during the pendency of the action." *Platoro Ltd. v. The Unidentified Remains of a Vessel,* 508 F.2d 1113, 1115 (5th Cir.1975). Where the vessel will not be present in the district during the pendency of the action, the court should dismiss the action for lack of *in rem* jurisdiction. *Lana Mora, Inc. v. S.S. WOERMANN ULANGA,* 672 F.Supp. 125, 129 (S.D.N.Y.1987). In the present action, the M/V CHARM sank at sea with no possibility of salvage. Consequently, it is clear that the vessel cannot be in the district during the pendency of this case, and this action against the M/V CHARM *in rem* must be dismissed for lack of jurisdiction.[4]

## CONCLUSION

For the foregoing reasons, Defendants' motion is hereby **GRANTED.** ·The Clerk of Court is directed to dismiss this action for lack of jurisdiction, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having granted Defendants' motion, an affirmative finding on Plaintiffs' motion is foreclosed and, thus, Plaintiffs' motion is **DENIED.** ·

**SO ORDERED.**

---

play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158.

**4.** Having found that this action must be dismissed for lack of both *in personam* and *in rem* jurisdiction, this Court declines to address Defendants' alternative argument that this action should be dismissed on the grounds of *forum non conveniens.*