[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 15, 2002
THOMAS K. KAHN
CLERK

No. 98-8639
_____

D. C. Docket No. 96-03270-1-CV-MHS

THE NIPPON CREDIT BANK, LTD,

                                        Plaintiff-Appellee,

versus

DOUGLAS G. MATTHEWS,

                                        Defendant-
                                        Crossclaim defendant,

FARM DEPOT, INC. and
FARM DEPOT OF DAVIE, INC., et al.,

                                        Defendants,

MATTHEWS FAMILY INVESTMENT PARTNERSHIP, LTD.,
MATTHEWS BROS., INC., et al.,

                                        Defendants-Appellants,

CORNERSTONE MANAGEMENT, INC.,
ULTRA-VITA CORPORATION, et al.,

                                        Defendants-Cross-Claimants-
                                        Appellants.

_____

Nos. 98-8687 and 00-15676
_____

D. C. Docket No. 96-03270-1-CV-MHS

THE NIPPON CREDIT BANK, LTD,

Plaintiff-Appellee,

versus

DOUGLAS G. MATTHEWS,
FARM DEPOT, INC., et al.,

Defendants,

MATTHEWS FAMILY INVESTMENT PARTNERSHIP, LTD.,
MATTHEWS BROS., INC., et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

**(May 15, 2002)**

Before BIRCH, GODBOLD and COX, Circuit Judges.

PER CURIAM:

The Matthews Family Investment Partnership, Ltd. ("MFIP"), Matthews

Brothers, Inc. ("MBI"), and Pacific Florida Holdings, Inc. ("PFH") (collectively, the

2

"Corporate Defendants/Appellants") and Achievers Unlimited, Inc. of Nevada, Inc., Achievers Unlimited, Inc. of Delaware, Inc., Cornerstone Management, Inc., Reliance Distribution Corp., Ultra Vita Corp., and CMH Capital, Inc. (collectively, the "Achievers Defendants/Appellants") appeal the district court's order awarding partial summary judgment in favor of Nippon Credit Bank, Ltd. ("Nippon") in its action to collect on a judgment. The Corporate Defendants also appeal the district court's denial of their petitions for attorneys' fees and litigation expenses, and appeal the district court's order on remand in which the district court found that the Corporate Defendants' contacts satisfied the due process requirements for personal jurisdiction. We find that the record supports the district court's exercise of personal jurisdiction over the Corporate Defendants. We also find that the record supports the district court's grant of summary judgment to Nippon and denial of the Corporate Defendants' petitions for attorneys' fees and litigation expenses. Therefore, we AFFIRM.

## I. BACKGROUND

MFIP is a family limited partnership formed under Florida law in May 1990 for the purpose of owning property, "receiving income therefrom, and operating and managing the Property in businesslike fashion with the intent of producing profits." R16-226, Ex. 1 at 10. At its formation, Douglas Gary Matthews and his brother,

Stephen Matthews ["Stephen"], were named as general partners. MBI is a corporation formed under Florida law in October 1991 to act as the general partner of MFIP; upon the creation of MBI, Matthews and Stephen transferred their general partnership interests to MBI. PFH is a corporation formed under Florida law in 1993 for the purpose of holding title to real property. Two-thirds of the PFH stock is owned by International Markets, Ltd. ("IML"), an Ireland corporation of which Matthews owns 100 percent; one-third of the PFH stock is owned by MFIP.

In January 1995, PFH gave a note and mortgage to Elizabeth Connelly, the president of Achievers Unlimited International, Inc. ("AUI"), a nutritional supplements marketing company, in exchange for a loan for $1,500,000. R15-229, Ex. 17 at 8, 19-20, Ex. 2. Connelly made the loan to PFH at Matthews' request. R15-229, Ex. 17 at 20-21. In March 1995, Connelly hired Matthews as the "CEO," " PRESIDENT," and "CHAIRMAN OF THE BOARD" of AUI. Id. at 42, Ex. 11. Matthews, and other people he introduced to her, assisted her with investments. R15-229, Ex. 17 at 54-55, 57. Due to Matthews' use of "nominee" or "assignee" shareholders to receive corporate paperwork, Connelly believed that she had ownership interests in AUI and in other Matthews-related entities but later learned that she did not. Id. at 45-46, 90-91, Exs. 17, 18, 21, 25, 29, 31, 34, 39-40. When she realized that her initial loans were to

4

entities controlled by Matthews, Connelly severed her relationships with him through a global "Settlement Agreement" dated 13 and 14 March 1996. R15-229-91-95.

The parties to the Settlement Agreement included Connelly, Gary Hangar, Matthews, Achievers Unlimited Inc. of Nevada, Cornerstone Management, Inc., Reliance Distribution Corp., CMH Capital, Achievers Unlimited Inc. of Delaware, RGH Enterprises, Inc., Ultra Vita Corporation, and AUI. R20-230, Ex. A at 1. Within the Agreement, Connelly assigned the note and mortgage to MFIP. Id. at Ex. 12-C at Replacement Renewal Promissory Note at 3 and Release of Collateral Assignment. Achievers released all claims to the note and mortgage. Id. at Ex. 26-G. MFIP subsequently assigned the note and mortgage to Achievers as collateral for two notes from AUI to Achievers in exchange for $10.00. Id. at 12-B.1 at Collateral Assignment of Note.

In May 1996, Nippon obtained an $8 million judgment, with attorneys' fees and costs, against Matthews in Intercredit Corporation v. Nippon Credit Bank, Ltd., No. 1:94-CV-2451-MHS (N.D. Ga.). Under a settlement agreement, Nippon agreed to accept $3 million from Matthews within two days of the execution of the settlement agreement, and a second $1 million payment before a date certain. When Matthews failed to make the $1 million payment, Nippon exercised a settlement agreement clause allowing it to enter a judgment against Matthews for $8 million.

5

In order to collect on this judgment, Nippon filed this action against Matthews, the Corporate Defendants, the Achievers Defendants and other parties.[1] Nippon alleged two causes of action: (1) that Matthews's abuse of the corporate form rendered each of the defendants liable under a "reverse alter ego" theory, R1-1-11-13,[2] and (2) that Matthews's fraudulent conveyances rendered each of the defendants liable. The district court issued a temporary restraining order and a preliminary injunction, freezing the assets of Matthews' alleged alter egos and restraining the defendants from making payments to Mathews or to his alleged alter egos.[3] The Corporate Defendants were directed to deposit all of their liquid assets into the registry of the court. The district court indicated that the Corporate Defendants' attorneys' fees would be paid from the registry funds.

---

[1] The remaining defendants were Farm Depot, Inc., Farm Depot/Wellington, Farm Depot of Davie, Inc., Farm Depot of Williston, Inc., Matthews Family Foundation, Douglas G. Matthews Revocable Trust, Douglas G. Matthews Irrevocable Trust, Yue Tai Services, Limited, Optima Management, Reliance Distribution Corporation, Lightbridge Properties, Inc., Lightbridge Holdings, Inc., Kathryn Matthews, Stephen Matthews, Sharon Campbell, Does 1-100, Interflight, Inc., and Space Master Investments, Inc.

[2] The records in these cases are filed as follows: in 98-8639 and 98-8687, the record consists of 34 volumes and 4 boxes of exhibits; in 00-15676, the record consists of 1 volume and 8 boxes of exhibits (which are also filed as the record and exhibits in 98-8639 and 98-8687).

[3] The Corporate Defendants appealed the order granting injunctive relief, but the appeal was dismissed as moot after the district court granted summary judgment. R28-309.

In August 1997, the parties stipulated to an order permitting PFH to sell a certain portion of its property, and depositing the proceeds into the registry of the district court. R10-150. Within the order authorizing the sale, the district court directed the Achievers Defendants and other parties to deliver a written release of their security interests "to enable PFH to deliver clear title to the Property to the purchaser" but specified that "liens and security interests of the Achievers Entities . . . shall continue and extend . . . to the Release Funds deposited into the registry of this Court." R10-150-2. The district court clarified that "Nippon does not waive any right to challenge the validity of . . . any claim[] which may be asserted by . . . the Achievers Entities . . . to the Release Funds" and "[n]either the Achievers Entities nor MFIP waive any claims, offsets or defenses as between themselves concerning their respective claims or entitlement to the Release Funds." Id. at 3-4. It stated that it would resolve "[a]ny disputes concerning the Release Funds." Id. at 5.

From September 1997 until March 1998, the Corporate Defendants filed a number of applications seeking a total of $294,805.91 in attorneys' fees and litigation expenses from the funds deposited in the court's registry. In March 1998, the district court released $30,000 and acknowledged that the fees remained pending.

Nippon and the Achievers Defendants moved for partial summary judgment on the alter ego claims, and the Achievers Defendants and the Corporate Defendants

moved for summary judgment on the fraudulent conveyance claims. Nippon and the Achievers Defendants also requested the proceeds from the sale of certain PFH land. The district court applied Georgia law, and granted summary judgment to Nippon on the alter ego claims against the Corporate Defendants finding "overwhelming evidence substantiating" Nippon's claim. R28-295-5. The district court denied the Achievers Defendants and Corporate Defendants' motions for summary judgment. Id. at 15, 17. The district court found that they failed to show the absence of a genuine issue of material fact on the fraudulent conveyance claims, and that the Corporate Defendants' motion on the alter ego claim was moot. The district court held that MFIP's receipt of $10.00 from the Achievers Defendants in exchange for the "collateral[] assign[ment] . . . [of] its rights under a $1.5 million promissory note . . . and a mortgage and security interest for a parcel of property in Florida" "create[d] a strong inference of fraud" which was a "a question for the jury." Id. at 17-18. The district court also denied the Corporate Defendants' applications for attorneys' fees from the court's registry. Id. at 19-22. Regarding the attorneys' fees, the district court found that "the majority of motions filed and arguments advanced by defendants were frivolous," they were not entitled to reimbursement for "unreasonable incidental expenses," the requested fees should be reduced for their failure to comply with the court's direction that their time logs be organized "according to particular motions prepared," the money in the registry

8

was deposited by only two of the six defendants represented by counsel, they were not entitled to compensation for "an unsuccessful interlocutory appeal . . .and request for expedited hearing," the "fees should be reduced as sanctions for discovery abuses and other unethical conduct," and that the record reflected that substantial sums were available and used "for a variety of purposes, in violation of the preliminary injunction." R28-295-19-21.

The district court denied the Achievers Defendants' request for the Release Funds, finding that

> [e]ven if [they] could demonstrate that the [security interest] transfer was bona fide, they nevertheless cannot recover those funds because they have failed to plead a counterclaim on which such recovery could be granted. The money was placed in the Court's registry by P[FH], and until this motion for summary judgment, [the Achievers Defendants] have failed to assert any claim to assets held by P[FH]. It is too late to assert such a claim now.

Id. at 18. The Achievers Defendants moved for reconsideration and leave to file an amended pleading to include a cross-claim to the funds, but subsequently withdrew the motion without explanation. R28-298-1-2; R29-311.

The "Final Judgment" entered by the district court on 4 May 1998 states:

> On April 14, 1998, this Court entered its Order (the "April 14 Order") which, among other rulings, granted (i) the motion for summary judgment filed by plaintiff The Nippon Credit Bank, Ltd. ("Nippon") against [the Corporate Defendants] and (ii) Nippon's unopposed motion for default judgment against [the Corporate Defendants and other named parties]. Pursuant to Federal Rule of Civil Procedure 54(b), the Court

9

having expressly determined that there is no just reason for delay in the entry of final judgment and enforcement proceedings thereon, the Court hereby makes the April 14 Order the Final Judgment of this Court with respect to the above-referenced motions and expressly directs the entry of Final Judgment in accordance with the April 14 Order.

R28-299.[4] The Corporate Defendants and the Achievers Defendants timely appealed.[5] The Achievers Defendants' notice of appeal stated that it was taken from the "*final judgment dated May 4, 1998 and order entered 14, 1998*." R29-313.

Following oral argument, we found that the "district court erred in utilizing the reverse alter ego theory to exercise jurisdiction over the Corporate Defendants," vacated the district court's order, and remanded "for a factual finding on whether the Corporate Defendants's contacts with the forum state satisfy due process requirements for the exercise of personal jurisdiction." R33-339-8. On remand, the district court found that the Corporate Defendants' contacts with the forum state satisfied due process requirements for the exercise of personal jurisdiction and reinstated its grant of summary judgment for Nippon. R34-357. The Corporate Defendants appealed.[6]

---

[4] On 11 May 1998, the district court entered a final judgment under Fed.R.Civ.P. 54(b) as to the denial of the attorneys' fees' petitions filed by the Corporate Defendants. R28-303.

[5] The Corporate Defendants and Achievers Defendants' appeals were docketed in this court as No. 98-8639. The Corporate Defendants appeal of the denial of their applications for attorneys' fees was docketed as No. 98-8687.

[6] The Corporate Defendants' appeal from the order on remand was docketed as No. 00-15676.

On appeal, the Corporate Appellants raise the following issues: (1) whether the district court properly exercised jurisdiction over the alter egos; (2) whether the district court erred in granting Nippon summary judgment; (3) whether enforcement of the judgment against the Corporate Defendants constituted a penalty; (4) whether the district court's disbursal order was proper; (5) whether the district court abused its discretion in denying their applications for attorneys' fees; and (6) whether the case should be reassigned to a different district judge. The Achievers Defendants raise the following issues: (1) whether a final judgment was issued against them; (2) whether the district court erred in failing to grant their motion for summary judgment; (3) whether the district court erred in concluding that they had not preserved a claim to the funds in the registry of the court; and (4) whether the district court erred in remitting to Nippon funds held pursuant to the Achievers Defendants' security interest.

## II. DISCUSSION

A. <u>Personal Jurisdiction over the Corporate Defendants</u>

The Corporate Appellants argue that district court's entry of summary judgment on the reverse alter ego claim should be vacated because the district court lacked personal jurisdiction over them. They contend that they are not residents of Georgia but are separate and distinct entities organized under Florida law, that none of the

11

transactions took place in Georgia, and that there was no nexus shown to connect them to Georgia. They also maintain that the district court's factual findings are not supported by the record.

On remand, the district court found that the Corporate Defendants had the requisite contacts to satisfy due process for the exercise of general jurisdiction. Specifically, the court found that MFIP's contacts were established by its maintenance of financial records and business information in Atlanta, Georgia, use of a Georgia mailing address, employment of Georgia accountants, use and maintenance of an Atlanta, Georgia bank account, interest in a Georgia polo farm, and entry into a joint venture agreement which contained Georgia choice-of-law and forum selection clauses and lease which called for the application of Georgia law. R34-357-4-5. The court found that MBI's maintenance of accounting and financial records in Georgia, procurement of services for accounting, bookkeeping, banking and administration in Georgia, and signature on documents calling for the application of Georgia law were sufficient contacts to support the exercise of jurisdiction. Id. at 6-7. The court found that its jurisdiction was warranted over PFH by its maintenance of financial records and procurement of accounting services in Atlanta, and its banking transactions through MFIP's Atlanta bank account. Id. at 7-8.

We review a district court's determinations regarding personal jurisdiction de novo, Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994), and review the district court's findings of fact for clear error. Honduras Aircraft Registry, Ltd. v. Gov't of Honduras, 129 F.3d 543, 546 (11th Cir. 1997). In a diversity action, a federal court has personal jurisdiction over a non-resident defendant to the extent permitted by the forum state's long-arm statute. Moore v. Lindsey, 662 F.2d 354, 357-58 (5th Cir. Unit B 1981). The Georgia long-arm statute provides for the exercise of "personal jurisdiction over any nonresident . . . if in person or through an agent, he: (1) Transacts any business within this state; . . . or (4) Owns, uses, or possesses any real property situated within this state." O.C.G.A. § 9-10-91. The statute confers jurisdiction to the "maximum extent permitted by due process." SES Indus., Inc. v. Intertrade Packaging Mach. Corp., 512 S.E.2d 316, 318 (Ga. Ct. App. 1999) (citation omitted). Under due process, the nonresident must "have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." Id. (internal quotation marks and citation omitted). In determining whether the nonresident was provided with fair warning, a court should consider whether the nonresident's "conduct and connection with the forum state are such that the nonresident should reasonably anticipate being haled into court there," Coopers & Lybrand v. Cocklereece , 276 S.E.2d 845, 850 (Ga. Ct. App. 1981), and whether the nonresident acted to avail itself of the forum state's law,

13

the claim relates to those acts, and the exercise of jurisdiction is reasonable. SES Indus., Inc., 512 S.E.2d at 318.

In actions arising directly or indirectly from business transacted in the state, the Georgia courts construe the term "transacting any business" "most liberally [] to uphold the jurisdiction of the court." Brooks Shoe Mfg., Inc. v. Byrd, 241 S.E.2d 299, 300-01 (Ga. Ct. App. 1977) (internal citation omitted); Shellenberger v. Tanner, 227 S.E.2d 266, 274 (Ga. Ct. App. 1976) (interpreting the prior version of the long arm statute and holding that the minimum contact requirement was satisfied ipso facto by a showing that the nonresident transacted business in Georgia and that the cause of action arose from that transaction). The Georgia courts have found that the minimum contact requirement is satisfied where "a substantial connection existed between [the nonresident], the controversy, and property [that the nonresident owned] within the state," Forrister v. Manis Lumber Co., 501 S.E.2d 606, 609 (Ga. Ct. App. 1998), and where the nonresident, through a third-party, initiates and negotiates a contract with a Georgia resident and travels to Georgia to inspect the subject of the contract and to sign the final sales order. SES Indus., Inc., 512 S.E.2d at 318. Jurisdiction is determined based on the "totality of the circumstances" and on consideration of whether the defendant "purposely availed itself of the privilege of conducting business activities within Georgia and has

14

thereby invoked the benefits and protections of the laws of this state." Brooks Shoe Mfg. Inc., 214 S.E.2d at 301.

Personal jurisdiction may be general, which arise from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise from the party's contacts with the forum state that are related to the claim. Madara v. Hall, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990); see also Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 415 n.9, 104 S. Ct. 1868, 1872 (1984) (a state exercises general jurisdiction when the defendant's contacts with the forum do not arise from or are not related to the cause of action). "The due process requirements for general personal jurisdiction are more stringent that for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). The "nonresident corporation's contacts with the forum that are unrelated to the litigation must be substantial" to warrant the exercise of general jurisdiction. Id.

General jurisdiction may not be exercised unless the contacts are "continuous and systemic." Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1057 (11th Cir. 1986). Although a single business transaction in the forum state by a foreign corporation whose officers resided in the same foreign state, the corporation was

not licensed to do business in the forum state, and the corporation did not maintain an office or employees, solicit business, provide services or close sales, sell or purchase products, or carry on any other activity in the forum state does not satisfy the "continuous and systemic" rule, id., "[a] single event may be a sufficient basis if its effects within the forum are substantial enough . . .." Shellenberger, 227 S.E.2d at 272; see also Georgia R.R. Bank & Trust Co. v. Barton, 315 S.E.2d 17, 20 (Ga. Ct. App. 1984) (finding the effect of a $125,000 default "substantial" enough "to establish legally sufficient contacts.") However, the indirect ownership of property, sporadic concert performances, and the sale of performance recordings are insufficient contacts for the exercise of general jurisdiction. Madara, 916 F.2d at 1516 n. 7.

The Georgia courts tend to place more emphasis on the tests for "minimum contacts" than "doing business." Klein v. Allstate Ins. Co., 413 S.E.2d 777, 779 (Ga. Ct. App. 1991). Although some contacts "standing alone" may be insufficient to show the minimum contacts, those same contacts with additional evidence may be sufficient to show minimum contacts.[7] HTL SP. Z O.O. v. Nissho Corp., 538 S.E.2d 525, 527-28

---

[7] The court in HTL noted that, although Georgia courts have found that a nonresident's telephone or mail contacts in Georgia, visits to Georgia, or even contractual provisions to apply Georgia law standing alone were insufficient to show the minimum contacts necessary to establish personal jurisdiction, those same contacts, supported by additional evidence of purposeful activity, would be sufficient to show minimum contacts. HTL, 538 S.E.2d at 527-28.

16

(Ga. Ct. App. 2000). The courts have held that the following contacts constitute transacting business within the meaning of the Long Arm Statute: executing guarantees which contained a Georgia choice of law clause, Drennen v. First Home Sav. Bank, 420 S.E.2d 376, 378 (Ga. Ct. App. 1992); negotiating the terms of an agreement within the state, Genesis Research Inst., Inc. v. Roxbury Press, Inc., 542 S.E.2d 637, 639 (Ga. Ct. App. 2000);[8] and availing oneself of a Georgia financial institution's resources, Georgia R.R. Bank & Trust Co., 315 S.E.2d at 20. "Jurisdiction is proper where the defendants' contacts with the forum proximately resulted from actions by the defendants themselves that create a 'substantial connection' with the forum state." Sturm v. Marriott Marquis Corp., 26 F. Supp. 2d 1358, 1373 (N.D. Ga. 1998) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2184 (1985)). Where a defendant's contacts are "methodical, purposeful and significant" and result from decisions as a director of a general partnership whose sole asset is located in Georgia, the defendant is presumed to have foreseen the decisions would affect Georgia and subject him to Georgia jurisdiction. Id. We have held that jurisdiction can be shown by the maintenance of financial records, Miller v. Laird, 474 F.2d 999, 1000 (5th Cir. 1973)

---

[8] The Corporate Defendants argue that, pursuant to O.C.G.A. § 14-2-1501 (b)(3), maintaining a bank account does not constitute transacting business in Georgia. That section, however, merely states that maintaining a bank account "do[es] not constitute transacting business" so as to require a "certificate of authority" from the Georgia Secretary of State pursuant to O.C.G.A. § 14-2-1501(a).

17

(per curiam), or a bank account, United States Sec. and Exch. Comm'n v. Carrillo, 115 F.3d 1540, 1545, 1548 (11ᵗʰ Cir. 1997) within the forum. Although a defendant may purposely avail himself of a forum state by participating in a meeting in the forum state for the significant negotiation of important terms of a contract, a defendant's attendance at a meeting in the forum state for the signing of a boilerplate contract does not necessarily rise to purposely availment. Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989, 993-94 (11ᵗʰ Cir. 1986).[9] Further, general partners in Georgia, who are served and provided their day in court, "are jointly liable with the partnership for all debts and obligations of the partnership." Co-op Mortgage Inv. Assoc. v. Pendley, 214 S.E.2d 572, 576 (Ga. Ct. App. 1975).

The record reflects sufficient contacts by MFIP, MBI, and PFH to establish jurisdiction. Despite Stephen's statements within his affidavit, that none of the Corporate Defendants owned real property, transacted business, or purchased or sold

[9] Jurisdiction will not be found where the defendants employed a state resident to perform services outside of the state but had no significant contacts within the state (do not reside within the forum state, are not licensed to do business in the state, do not conduct business in the state, have no office, telephone listing, post office box or street address within the state, have no bank accounts within the state, have no customers in the state, derive no income from the state, neither own nor lease property within the state) and none of the significant events leading to the litigation occurred in the state. Johnston v. Frank E. Basil, Inc., 802 F.2d 418, 420-21 (11ᵗʰ Cir. 1986).

18

goods in Georgia, R34-344, Affidavit at 2, the record shows that they owned property, transacted business, and purchased goods in Georgia.

Tracie Byrd, a Georgia resident, was an officer and paid employee of defendant Optima Management. She testified that she performed clerical and administrative services, at the direction of Matthews or Stephen, for MFIP from 1993 until 1997, at an Atlanta office.[10] R15-229, Ex. 12 at 24-25, 39-42. She prepared letters for MFIP for the signature of either Douglas or Stephen Matthews. Id. at 65. In 1995, she notarized an assignment of loan from Matthews to MFIP in Georgia. R16-226, Ex. 17. She said that, during that period of time she worked for Optima, MFIP maintained a bank account at Nationsbank and that she became a signatory of that account at Matthews's request. R15-229, Ex. 12 at 44-45. In Atlanta, she wrote checks on the MFIP account when she received invoices from Matthews. Id. at 46-48. She stated that, although she received copies of the bank statements, the MFIP bank records were kept in Florida. Id. at 48. She testified that she maintained MFIP's accounting records on a computer program until April 1997, and prepared MFIP's and PFH's financial statements with information provided by Matthews. Id. at 51, 166-67, 169. Byrd said that the PFH accounts were maintained in Florida, but that she had performed some typing for PFH,

---

[10] Byrd testified that she received no compensation for these services from MFIP, but just did as she was told. R15-229, Ex. 12 at 41-42.

19

was a signatory on PFH's Nationsbank account, and had signed a check for PFH.  Id. at 85, 74-75, 82-85.

Matthews did not recall any other MFIP bank accounts except for the Nationsbank account.  R1-8-136.  The Nationsbank account records showed that it was opened and maintained at a bank in Georgia.  R1-8, Ex. 35; R15-228, Ex. 9 at MFIP signature card.  The MFIP signature card shows a business address in Florida and a mailing address in Atlanta, Georgia.  R15-228, Ex. 9 at MFIP signature card.  The account was used for deposits from Matthews's offshore enterprises, and for payments of costs relating to Matthews's personal aircraft.  R1-8 at 126-44; 84-85, 169.  During 1996, MFIP transferred more than $400,000 to Optima, which was used for Matthews's personal expenses or negotiated by Matthews for cash.  R16-226, Exs. 41-47.  MFIP funds, drawn on MFIP's Georgia bank account by Bryd, bookkeeper Banne Greg in Atlanta, or Matthews, were used to pay Matthews's dues and expenses at the Palm Beach Polo and Country Club, R1-8 at 90-91; R15-229, Ex. 12 at Ex. 22, and Matthews's children's Atlanta school tuition, R1-8 at 86, Ex. 16; R16-226, Ex. 14.  The Atlanta, Georgia accounting firm of Smith & Radigan performed services for MFIP, PFH, and MBI from 1994 until 2000.  R16-226, Ex. 6.  The MBI records were maintained by Matthews.  R1-6-34.

In 1990, MFIP gave Matthews an unsecured promissory note for $2,150,000, to "be governed by . . . the laws of the State of Georgia."[11] R9-146-47, Ex. 111. In 1991, MFIP entered into the "Polo JV Joint Venture Agreement" ("Polo JV") with the Pasco M. Domenicone Vacation Home Trust ("Domenicone Trust") regarding a polo farm in Georgia, which called for the application of Georgia law, arbitration in the City of Atlanta, and the venue of any legal action "only in the courts of Forsyth County, Georgia." R15-229, Ex. 26, Ex. 118 at 13-15. On 1 March 1991, MFIP leased the polo farm to Matthews and required the application of Georgia law, R1-8, Ex. 34 at 1-2,[12] and the Polo JV entered into an agreement with Pasco M. Domenicone, consenting to jurisdiction in Forsyth County, Georgia, R15-229, Ex. 23, Ex. 47 at 2. MFIP was subsequently sued by the Domenicone Trust in Georgia, and entered an appearance in that case. R26-277-3.

The record clearly shows that MFIP, MBI, and PFH continuously, systematically, and purposely availed themselves of the privilege of conducting business activities within Georgia. MFIP, MBI, and PFH hired accounting services in

_____

[11] Although the note identified MFIP as a Florida limited partnership and Matthews as a resident of Florida, the note provided for the application of Georgia law. The note was signed on behalf of MFIP by Matthews as general partner. R9, Ex. 111.

[12] In 1996, MFIP leased the horses kept at this Georgia property to Matthews, and required the application of Florida law. R1-8-32-33, 70-71, Ex. 2.

21

Georgia. MFIP and PFH maintained bank accounts at a Georgia financial institution. MFIP executed a promissory note, a joint venture agreement, and a lease each of which contained a Georgia choice of law clause, maintained its banking records in Georgia, and used secretarial and bookkeeping services in Georgia. PFH used secretarial services in Georgia. MBI, as a general partner of MFIP, is jointly liable with MFIP for all debts and obligations of the partnership.

Further, in stipulated orders entered by the district court on 8 August 1997 and on 3 February 1999, MFIP and PFH agreed that any disputes concerning the sale of certain named properties would be resolved by the district court. R10-150-5; R33-324-5. Because MFIP and PFH agreed to personal jurisdiction in Georgia and have failed to present evidence that the stipulated orders were signed under duress or are unreasonable, they cannot assert that personal jurisdiction violates due process. See Alexander Proudfoot Co. World Headquarters L.P. v. Thayer, 877 F.2d 912, 921(11th Cir. 1989). A court cannot dismiss a suit for lack of personal jurisdiction after a defendant has consented to litigate the action in that court. Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990).

For these reasons, we find that the district court correctly determined that it possessed personal jurisdiction over the Corporate Defendants.

B. Summary Judgment for Nippon

22

The Corporate Defendants argue that the district court erroneously assumed that they did not dispute facts alleged by Nippon, and that the district court erred in finding that MFIP, MBI, and PFH were Matthews's alter egos. They maintain that the district court erred by considering depositions which were taken in an earlier case, and by relying on unauthenticated documents. The district court noted that the defendants did not dispute "most of the facts" set forth by Nippon, and discounted their accounts of the disputed facts.[13] R28-295-7. The district court found that, "even if [the defendants] were remotely credible, the abundant *undisputed* facts nevertheless mandate a plaintiff's summary judgment because they conclusively demonstrate that the MFIP, [M]B[I], P[FH], and Optima are Matthews' alter egos." R28-295-8.

The district court did not err by considering the depositions or by relying on the documents. Nippon submitted the eight depositions taken in the <u>Intercredit Corp.</u> litigation in support of its motion for summary judgment, and each deposition was filed with the district court in this case. Matthews, who was a party to <u>Intercredit Corp.</u>, was the deponent for two of the depositions, and was provided with notice and an

---

[13] The district court found that the defendants' allegations regarding the disputed facts were "so preposterous that they are completely unworthy of credence, directly contradict the sworn deposition of Matthews and his brother Stephen, or are conclusory, blanket denials unsupported by any evidence except the Matthews brothers' self-serving affidavits. No reasonable jury could possibly believe defendants' version of the facts." R28-295-7.

opportunity to attend and cross-examine each of the remaining deponents. Although neither the MFIP, MBI or PFH were parties to the Intercredit litigation, Matthews is the controlling officer of each of these corporations. Depositions are generally admissible provided that the party against whom they are admitted was present, represented, or reasonably noticed, Fed.R.Civ.P. 32(a), and are specifically allowed in consideration of summary judgment. Fed. R. Civ. P. 56(c). A depositions taken in a different proceeding is admissible if the party against whom it is offered was provided with an opportunity to examine the deponent. Fed. R. Evid. 804(b)(1). Further, although the Corporate Defendants maintain that the district court improperly considered an unauthenticated signature card for a PFH account, R16-226, Ex. 28, the card was authenticated by the affidavit of Jewell Nutter. R15-228, Ex. 9.

C. Enforcement of the Judgment Against the Corporate Defendants as a Penalty

The Corporate Appellants argue that the district court's enforcement of the $8 million Intercredit judgment against Matthews constitutes an unenforceable penalty under Georgia law because it bears no relationship to the $1 million in damages actually suffered by Nippon. In the Intercredit litigation, Nippon sought to recover the default of $80 million in loans made to Intercredit Corporation. R21-231, Ex. Videotaped Deposition of Yoichi Nishio ("Nishio Dep.") at 34-35. In one of the provisions of the settlement agreement in that action, Matthews agreed to pay Nippon $8 million. Id., Ex.

24

4 at 1. The settlement agreement provided that the amount of judgment would be reduced if $4 million was paid within a prescribed period but that the failure to make these payments would result in the enforcement of the $8 million judgment. Id. at 2. Either of these figures, the full $8 million or the reduced $4 million, represented substantial reductions in the amount sought by Nippon in the litigation. The settlement agreement upon which the judgment was based was signed by Matthews both as chief executive officer of Intercredit and on his own behalf, and was signed by counsel for both Intercredit and Matthews. Id. at 9-10. In exchange for the settlement agreement, Nippon waived the right to sue for $80 million. Id. at 3. After Matthews failed to make the $4 million payment, Nippon obtained a judgment for $8 million. Matthews neither contested nor appealed the entry of the judgment.

In Georgia, the determination of whether a provision constitutes liquidated damages or a penalty is controlled by "the effect it was intended to have and whether it was reasonable." Southeastern Land Fund, Inc. v. Real Estate World, Inc., 227 S.E.2d 340, 342 (Ga. 1976). A provision will be considered as liquidated damages if (1) the injury caused by the breach would be difficult to estimate, (2) the parties intend to provide for damages, (3) the provided amount was a reasonable estimate of a probable loss, and (4) both parties are bound by the agreement. Id. at 343. The judgment does not constitute a penalty. The judgment was based on a settlement agreement which

substantially reduced the amount sought in the underlying litigation. The agreement provided for damages from a breach which would be difficult to estimate, shows that the parties intended for damages from such a breach, allowed for a sum based on a reasonable estimate of the probable loss, and bound both parties. The Corporate Defendants' argument on this issue is meritless.

D.  District Court's Disbursement Order

The Corporate Appellants argue that the district court's disbursal order failed to comply with the local rules of the Northern District of Georgia because it did not contain language mandated in such orders pursuant to Rule 67.1D(2). Within the order granting summary judgment for Nippon, the district court denied Matthews's motion for payment of his attorneys' fees from the funds held in the court's registry, denied the Achievers Defendants' request for disbursement from the funds, and denied the Corporate Defendants' attorneys' motion for attorneys' fees from the funds. R28-295-2, 17, 19. The court found that the Corporate Defendants were Matthews's alter egos, granted Nippon's motion for summary judgment, and ordered "disbursement to [Nippon] of all funds deposited in the Court registry."[14] Id. at 2.

---

[14] In conclusion, the district court directed "the Clerk to disburse the remaining balance of the Court's registry, including interest, to [Nippon.]" R28-295-24.

26

The Local Rules of the Northern District of Georgia require "[a]n order . . . directing that funds in litigation be . . . disbursed from the registry of the court." N.D. Ga. R. 67.1A(1). A party moving for disbursement of registry funds must submit a "proposed order" which

> shall contain therein the following language: ". . . the clerk is authorized and directed to draw a check(s) on the funds on deposit in the registry of this court in the principal amount of $__ plus all accrued interest, minus any statutory users fees, payable to (name and address of payee) and mail or deliver the check(s) to (payee or attorney) at (full address with zip code)."

N.D. Ga. R. 67.1D(1) and (2).

Initially, we note that the Corporate Appellants did not initially present this issue to the district court.[15] We generally "will not consider an issue or theory that was not raised in the district court." Narey v. Dean, 32 F.3d 1521, 1526 (11th Cir. 1994) (quotation and citation omitted). Further, although we have not addressed this issue, other courts have permitted district courts to depart from local rules even where the rule is phrased in mandatory language where it has sound rationale and does not unfairly prejudice a party. United States v. Eleven Vehicles, 200 F.3d 203, 214-15 (3rd Cir. 2000) (reviewing the various circuit court opinions). The rule at issue is specifically addressed to litigants who move for disbursement of registry funds. The

_____

[15] See Motion for Stay of Judgment Pending Appeal, R28-304,

27

parties were familiar with the amount of funds in the registry and the party to whom the disbursement was made was clear to all. It does not appear that there was any prejudice to the parties. Therefore, we find this issue meritless.

E. Denial of Attorneys' Fees

The Corporate Appellants maintain that the district court abused its discretion in denying their applications for payment of their attorneys' fees from the moneys deposited in the registry of the court. They contend that the ruling is not supported by the record or the law, and constituted an overly harsh and improper penalty.

The district court denied the Corporate Defendants' request for disbursement of attorneys' fees because it concluded that "the majority of the motions filed and arguments advanced by [the Corporate Defendants] were frivolous." R28-295-19. It recited that they had filed numerous meritless emergency motions, motions for reconsideration, and motions to strike and that their summary judgment motion was "largely frivolous." Id. It found their costs "unreasonable" because they had employed an expensive courier to unnecessarily deliver their motions to chambers, requested costs for "excessive and inappropriate telephone conversations with Court staff," failed to comply with an order to organize their time logs, failed to take seriously the court's admonition regarding discovery abuses, inappropriately attempted to procure funds from the court's registry through direct contact with the court financial supervisor, and

28

had "perpetually used [their available] funds . . . in violation of the preliminary injunction." Id. at 20-21.

We review the district court's denial of the release of funds held in the registry of the court pursuant to a preliminary injunction for abuse of discretion. Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1517 (11th Cir. 1994). The district court's findings are supported by the record. Therefore, we conclude that the district court did not abuse its discretion when it denied the Corporate Defendants' applications for attorneys' fees.

F. Reassignment to a Different District Judge

The Corporate Appellants argue that the case should be reassigned to a different district court judge because the judge was hostile toward them and their attorneys, did not admonish Nippon for its violations of the Local Rules or the district court's order, and permitted Nippon to draft substantive orders. They reference the district court's ruling on their motion to determine the sufficiency of Nippon's responses to their requests for admission and the comments and rulings regarding their motions and their response to Nippon's motion for summary judgment, and their attorneys' conduct. We may direct reassignment of a case on remand upon the consideration of three factors: (1) the original judge's difficulty in setting aside his earlier positions and findings; (2) whether the reassignment would preserve the appearance of justice, and (3) whether the

29

waste and duplication of reassignment will outweigh the gains of reassignment. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1373 (11ᵗʰ Cir. 1997). Because all other issues raised by the Corporate Appellants have been decided, the Corporate Appellant's request for reassignment is DENIED as moot.[16]

---

[16] We further note that there is no indication in the record that the original judge's views and findings created the appearance that he was unable to perform his role in an unbiased manner or , offended the appearance of justice. See United States v. Torkington, 874 F.2d 1441, 1446-47 (11th Cir. 1989) (per curiam) (reviewing the situations where reassignment may be approrpriate). In denying the Corporate Appellants' motion to determine the sufficiency of Nippon's responses to their requests for admission, the district court found the motion "frivolous and designed . . . to harass [Nippon] and delay this litigation." R13-193-13-14. It commented that the Nippon had responded sufficiently to the interrogatories, provided supplemental responses, and made the documents in its possession available. Id. at 13-15. The district court denied the Corporate Defendants' motion to strike Nippon's motion for summary judgment, and noted that they had orally misrepresented whether Nippon had moved for a page limitation extension. R23-247. It ordered counsel to refrain from calling or visiting chambers and that all communication be made in writing because they had "abused the privilege of communicating with the Court's staff." Id. at 1. The district court denied the Corporate Defendants' motion to stay execution of Nippon's judgment, commenting that "there [wa]s no reason to believe that their behavior" [of "ignor[ing] the injunction throughout this litigation"] would change if the judgment was stayed. R29-314-4. Based on the Corporate Defendants' written statements that they would no longer remit mortgage payments on their assets subject to the judgment, the court remarked that the assets were in jeopardy of other losses "even if the defendants could be trusted to preserve their assets." Id. The district court found that the Corporate Defendants' factual accounts in response to Nippon's summary judgment motion "so preposterous that they are completely unworthy of credence," directly contradicted by deposition testimony, or "conclusory, blanket denials unsupported by any evidence except the Matthews' brothers self-serving affidavits." R28-295-7. To the extent that these comments and those noted in the discussion of the Corporate Defendants' applications for attorneys' fees reflect "hostility" by the district court, the comments are documented and explain the district

G.  Final Judgment as to the Achievers Defendants

The Achievers Appellants argue that, because the district court failed to dispose of all of their claims, we lack jurisdiction to review their appeal. They request a limited remand to permit the issuance of a district court certification as to the finality of the judgment as to their motion for summary judgment. No other parties responded to this issue in their briefs, at oral argument, or addressed it on limited remand.

The Achievers Defendants' notice of appeal complied with Fed.R.App.P. 3(c) in that it designated the order appealed. See McDougald v. Jenson, 786 F.2d 1465, 1474 (11ᵗʰ Cir. 1986). However, it is clear from a review of the Achievers Appellants' brief that the district court's ruling that they wished to appeal was not the ruling certified as final under Fed.R.Civ.P. 54(b) by the district court, the grant of Nippon's motion for summary judgment, but the denial of their motion for summary judgment. Although we will "liberal[ly] allow[] appeals from orders not expressly designated in the notice of appeal, at least where the order that was not designated was entered . . . contemporaneously with the order(s) properly designated in the notice of appeal,"

court's ruling. Further, to the extent that the three orders were prepared by Nippon, the Corporate Defendants were provided with an opportunity to respond to the proposed orders before they were entered.

McDougald, 786 F.2d at 1474, we are unable to do so in this case. We will not address claims that "are [beyond] the  scope of the issue" certified for an interlocutory appeal. Stanley v. United States, 786 F.2d 1490, 1499 (11th Cir. 1986), rev'd in part on other grounds, 483 U.S. 669, 107 S.  Ct. 3054 (1987). Therefore, we will not consider the Achievers Appellants' arguments regarding their motion for summary judgment. We will, however, address the Achievers Appellants' claim to the funds held in the court's registry because the district court ordered the disbursement of the funds held in the court's registry. See In re Six, 80 F.3d 452, 455 (11th Cir. 1996) (recognizing the exception to strict finality when the order decides the right to the property in question and directs its delivery).

We affirm the district court's denial of summary judgment on the fraudulent conveyance issue. It is clear that issues of material fact remain unresolved on this issue. Nippon alleged that Matthews orchestrated the assignment of a mortgage and a note by MFIP to the Achievers Defendants in order to hide assets from Nippon's execution of the judgment. In exchange for a note valued in excess of $1 million, MFIP received $10 "and other good and valuable consideration." R20-230-Ex. A at Ex. 12-B-1 at "Collateral Assignment of Note, Mortgage and Financing Statement" at 1. The "other good and valuable consideration" remains undefined. The timing of the transfer and the appearance of Matthews' involvement in the exchange are also possibly strong indicators

32

of fraudulent intent that "are subject to explanation." The note was one of the many transfers covered in the global "Settlement Agreement" entered into between Matthews, the Achievers Defendants, and other parties on 13 March 1996, a little over 60 days before the judgment was entered against Matthews in Intercredit Corp.

H. Achievers Defendants Claim to the Funds in the Court's Registry

The Achievers Appellants argue that the district court erred in finding that they had failed to preserve their claim to the registry funds because the district court had recognized their security interest in property which the district court authorized to be sold and had stated that it would resolve the parties' claims to the funds. They acknowledge that they did not file a claim for the funds, but contend that they should not be penalized on such a technicality. They maintain that they should have been permitted to amend their pleadings in order to cure such a deficiency. The Achievers Defendants did not file an application for the Release Funds, but requested an order directing the proceeds from the sale of the property within their motion for summary judgment. R20-230-2.

Because the Achievers Appellants' claim to the Release Funds "ar[ose] out of the transaction or occurrence that is the subject matter of the opposing party's claim and d[id] not require for its adjudication the presence of third parties of whom the court c[ould not] acquire jurisdiction," they were required to plead it in a compulsory

33

counterclaim. Fed.R.Civ.P. 13(a). Compulsory counterclaims which are not brought are

"thereafter barred." Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1, 94 S. Ct.

2504, 2506 (1974). Because Achievers Appellants withdrew the motion to amend, we

will not review it on appeal. Newmann v. United States, 938 F.2d 1258, 1264 (11th Cir.

1991) ("we will not consider an issue not argued to the district court"); Narey, 32 F.3d

at 1526-27 (stating the rule and five exceptions; this issue does not fall into one of those

exceptions).

I.     Remittitur of Nippon Funds Held Pursuant to the Achievers Defendants Security
       Interest

The Achievers Appellants argue that the district court erred by dismissing the

action as to them and distributing the proceeds to Nippon. They claim that they were

entitled to a jury trial on Nippon's fraudulent conveyance claim. Nippon responds that

the Achievers Defendants' claim was extinguished by operation of law.

The PFH note was governed by Florida law. In Florida, "where notes secured by

a mortgage come into possession of the maker, such notes and pro tanto the mortgage

securing them are regarded as thereby extinguished as to third persons, no matter what

would be the effect of the reissue of the notes between the maker and a second holder."

Walter J. Dolan Prop., Inc. v. Vonnegut, 184 So. 757, 762 (Fla. 1938). In Georgia, an

alter ego is shown where "the corporation and its owners have such unity of interest and

34

ownership that they lack separate personalities." United States v. Fidelity Capital Corp., 920 F.2d 827, 837 (11th Cir. 1991). "The effect of disregarding the corporate entity" is "that the corporation and the [entity] who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, . . . both are equally bound." Id. at 838 n.37.

The note was transferred from Elizabeth Connelly to MFIP, and from MFIP to Achievers, via a collateral assignment. The Achievers Defendants admitted that MFIP and PFH were alter egos of Matthews. R1-1-11 at ¶ 43; R4-69-2 at ¶ 1. The assignment of the note and mortgage to MFIP upon express instructions from Matthews was effectively a transfer to PFH, and thus extinguished the obligations of the note. Further, under the terms of the Settlement Agreement, the Achievers Defendants released their rights under the PFH notes. Based on the merger of the note, the Achievers Appellants rights were extinguished. The district court did not err in disbursing the Release Funds.

## III. CONCLUSION

Because the record supports the district court's exercise of personal jurisdiction over the Corporate Appellants and the grant of summary judgment to Nippon, the district court's judgment is AFFIRMED. The Corporate Appellants' request for reassignment of the case to a different district judge is DENIED as moot.